(46 South. 355.)

No. 16,990.

### MAILLE v. ILLINOIS CENT. R. CO.

(April 27, 1908.)

1. PLEADING—CONSTRUCTION.

The suit is one brought by plaintiff in his capacity of father of his minor child, seeking to recover damages for personal injuries received by the child. Where a plaintiff bringing suit in a representative capacity joins individually as a coplaintiff, it is usual for that fact to be declared. The prayer of the petition must be read in connection with the pleadings. The damages prayed for are declared upon as damages due to the child. Ashbey v. Ashbey, 38 La. Ann. 902.

2. APPEAL—JUDGMENT—MODIFICATION.

The district court rendered a judgment in favor of the defendant against plaintiff upon his demand for damages, dismissing the demand as of nonsuit. Defendant appealed, praying to have the judgment altered to an absolute judgment in its favor. Plaintiff on appeal has not prayed for any alteration of the judgment, but resists defendant's demand for a change. There is no suggestion by plaintiff that he will be able to obtain additional evidence, and no reason to suppose that the witnesses on a second trial will alter their evidence. Plaintiff recognizes by his conduct that his demand on the evidence as adduced does not warrant a judgment in his favor. Judgment changed to an absolute judgment in defendant's favor.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Simmon Maille against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed.

Hunter Collins Leake, Joseph Quintero Gowland, and Gustave Lemle (J. M. Dickinson, of counsel), for appellant. John William Cary, for appellee.

NICHOLLS, J. The petition in this case was filed as that "of Simmon Maille, a resident of the city of New Orleans."

It represented that the defendant company was indebted to him in the full sum of $25,000, with legal interest from the date of judgment until paid, for this, to wit: That on the 22d day of March, 1907, at about 9 o'clock a. m., at the corner or near the corner of Water and Bordeaux streets, in this city, petitioner's son, Joseph Maille, a child between the ages of four and five years, while quietly and peaceably enjoying himself on said thoroughfare, was struck by a freight train drawn by engine No. 465 of the Illinois Central Railroad Company and thrown under said cars, the wheels passing over left leg above ankle, necessitating an amputation of said member.

That as a result of said injury said Joseph Maille suffered great bodily injury and great bodily and mental agony and pain, that he had been continously confined in the Charity Hospital of this city since the accident, for a period of two months, and that the deprivation of said limb will necessarily interfere with his means of earning a livelihood.

That said injuries were caused by no fault or negligence on the part of said child, but were caused and occasioned solely and entirely by the fault and gross negligence, carelessness, and want of skill on the part of said Illinois Central Railroad Company, its officers, supervisors, etc.; that it was the duty of said Illinois Central Railroad Company to take all necessary precautions for the protection of human life, and to provide safeguards and every necessary means to insure safety to pedestrians, and more especially children. That on account of said injuries and suffering, physical and mental, he and his said child have sustained damages in the full sum of $25,000, as follows:

| | |
|---|---|
| For suffering, mental and physical, to child .......................... | $10,000 |
| Losses due to incapacity by reason of said deprivation of a leg........... | 15,000 |
| Total ........................ | $25,000 |

That petitioner is entitled to recover said amount from said company for the use and future comfort of his said child.

In view of the premises, petitioner prayed the defendant be cited, and that there be judgment in his favor and against defendant in the sum of $25,000 damages, with legal interest from date of judgment until final payment.

Defendant answered, pleading first a general denial. It then alleged that the alleged injury was not in any manner due to its fault, negligence, or want of care, but, on the contrary, was due to the fault and negligence of its parent, plaintiff herein, in permitting a child of tender years to be alone on the streets unattended. It prayed that plaintiff's suit be dismissed.

The issues were tried without a jury by the district judge. The court rendered a judgment in favor of the defendant against the plaintiff, dismissing the demand of the plaintiff as in case of nonsuit. Defendant has appealed.

No prayer for an amendment of judgment has been filed. Appellant insists that the case is before the court as one brought by the father of the child and on his behalf, and also on his own individual behalf, and that

it should be dealt with by the court from that standpoint. It claims that the judgment of nonsuit rendered by the district court should be reversed, and that there should be final absolute judgment in its favor, rejecting plaintiff's demands.

We entertain no doubt as to the action being one brought by the father of the child in that capacity for its use and benefit. Where a plaintiff bringing suit in a representative capacity joins individually as a co-plaintiff, it is usual for him to so declare. This was not done in this case. The prayer must be read in connection with the pleadings. The damages set out are declared to be the damages due to the child. None other are mentioned. Ashbey v. Ashbey, 38 La. Ann. 902.

Jennie Maille, the sister of the little boy, testified that there was a neutral ground in front of their house in which there was a swing or volador; that on the morning in question she was going to the grocery and left the boy playing in the swing; that the child called to her, and, looking back, she saw him lying down between the river and the railroad track, holding his foot up; that she ran to catch him, and carried him as far as the car track; that she had not seen the train until the child called her, and she fainted and knew nothing further.

Defendant's train at that time had gone by. After she left the child playing at the swing, he went from the swing and crossed over the track, to the river side of the track. He went over there to get some sand in a can. He was playing with sand at the time. After the accident the can was on the side of the railroad track. There were only three witnesses who testified to having seen the accident. They were Argus, Kimmel, and Unger. Their testimony was alike. Argus testified that defendant's train was on its way going south from Southport to the Stuyvesant docks; that it was moving, he thought, very fast, 15 or 20 miles an hour; that the accident occurred on Water street, between Bordeaux and Valence streets; that he and the witness Kimmel, were on Water street, between Valence and Cadiz, at the time; that he saw the child walking on the side of the railroad track, outside of the rail, on the river side; that he was walking with his back to the train which was approaching, when the train came along, hit him, and knocked him down; that the engine hit him in the back; that he was not close enough to see exactly where it hit him; that when he was struck he rolled over on the side, and, falling on the side, the front part of his foot went on the track. Witness ran down to the place of the accident. The child's sister got there before him, but had fainted. He picked the child up, and carried it to the gate of its parent's home. The court allowed to be introduced in evidence a statement of the child (who was about five years old), made to a policeman who arrived on the spot about 15 minutes after the accident to try and ascertain the facts of the case, to the effect that when he was hurt he was playing near the track with sand, and that, the can which he was holding having rolled on the track, he had put out his foot to get it back, when his foot was run over. A similar statement, made later to the witness Nunez, was also allowed in evidence.

No witnesses of the defendant saw the accident. The company defended the case on the theory that the child was not at or near the track; that its employés were all at their proper places on the train; that none of them saw the child; that the train was not running at a greater rate than two or three miles an hour, as it had to stop at Napoleon avenue, just below where the accident occurred, to have the switch there opened to allow it to pass into the yard at the Stuyvesant docks. Defendant showed by the testimony of the physician who attended the

child that there was no bruise upon the child's back.

There can be no doubt that the child's foot was crushed by being run over by one of the wheels of the defendant's train, the circumstances under which this was done make a different question. We think it was established that the child had, before the train reached him, crossed over the railroad track and was playing on the green, outside of the rail of the track, next to the river. The case in its features resembles those of Ortolano v. Morgan's Louisiana & Texas Railroad & Steamship Company, 109 La. 902, 33 South. 914, and Rice v. Crescent City Ry. Co., 51 La. Ann. 108, 24 South. 791. We cannot say that the engineer of the train was not in his cab when the child was hurt and just before. It is very singular that none of the trainmen saw the child, as near as he was to the track, if they were looking to the front and side, as they should have been. We do not attach much importance to the speed with which the train was moving when the child was hurt, as the same result could well have followed the striking of such a small child by a train moving at two miles an hour as one moving faster. The witnesses of the plaintiff were not impeached as to their reputation for veracity. Their testimony as to the speed of the train was not, we think, correct; but they were some distance ahead of the train, and could not well tell how fast it was moving, nor could they, from the distance they were, say what part of the child's body was struck.

We have examined the testimony in this case with reference to the possibility or probability of the result of a second trial, should one be granted. We have no reason to suppose that plaintiff could, on a second trial, procure additional testimony; nor have we reason to suppose that the witnesses would, on a second trial, vary their testimony in any

respect from that which they have already given.

So far as the present trial is concerned the rights of the parties are settled. The case is before us under peculiar conditions. The plaintiff has not appealed; nor did he, when the opportunity was given him through the appeal of the defendant, avail himself of the opportunity afforded to him seek to obtain a reversal or amendment of the judgment. He has acquiesced in the same, and recognizes that the judgment, as rendered by the trial court on the pleadings and evidence before it, was correct. While acquiescing in the present judgment, plaintiff vigorously resists the attempt of the defendant to cut him off from a second hearing.

We see no good ground for prolonging this litigation.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, altered from a judgment in favor of the defendant against the plaintiff, dismissing plaintiff's demand as one of nonsuit, into one rejecting plaintiff's demand finally and absolutely. Plaintiff to pay the costs of appeal.