Ernest TRIPLETT, Plaintiff,

v.

Dr. Azizollih AZORDEGAN et al., Defendants.

No. C 75–4008.

United States District Court, N. D. Iowa, W. D.

Oct. 12, 1977.

Robert D. Bartels, John M. Thompson, Kent B. Magill, Prisoner Assistance Clinic, Iowa City, Iowa, Stephen F. Avery, Spencer, Iowa, for plaintiff Triplett.

James L. Abshier, City Atty., Michael S. Walsh, Asst. City Atty., Sioux City, Iowa, for employees of City of S. C., Russell H. White and William Dennison.

Richard Turner, Atty. Gen., John Beamer, Stephen C. Robinson, and Fred M. Haskins, Asst. Attys. Gen., Des Moines, Iowa, for employees of State of Iowa, Wm. Sanguin and Dr. Sainz.

Addison M. Parker, Dwight W. James, Richard A. Malm, Des Moines, Iowa, Frank C. Horton, Jackson, Miss., for Azordegan.

Emmanuel S. Bikakis, Dewis J. Gaul, Richard Rhinehart, David E. Vohs, Sioux City, Iowa, for Donald O'Brien.

Frank J. Margolin, Sioux City, Iowa, for Wm. Dennison and Russell White.

John W. Gleysteen and Marvin F. Heidman, Sioux City, Iowa, for Robert Beebe and Wm. Sturges.

Harry H. Smith and LeRoy J. Sturgeon, Smith & Smith, Sioux City, Iowa, for Dennison.

## ORDER

McMANUS, Chief Judge.

This order is the result of a spate of motions and requests in this labyrinthine litigation which began three years ago. Matters before the court include: (1) a resisted motion for summary judgment filed August 10, 1977 by defendant Sanguin [1]; (2) a resisted motion filed May 19, 1977 to vacate this court's January 25, 1977 order dismissing defendants Azordegan, and Sainz; (3) a resisted motion for court ordered service filed May 2, 1977; (4) defendant Azordegan's request for oral argument on the question of personal jurisdiction; and (5) plaintiff's resisted motion for partial summary judgment against defendant Sanguin filed July 28, 1977.

On September 11, 1974, the plaintiff brought an action under 42 U.S.C. § 1983 against eight defendants, each of whom was sued individually and in his official capacity.[2] The complaint alleges plaintiff was deprived of his constitutional rights under color of state law by virtue of his being drugged before confessing to a 1954 murder. Plaintiff was convicted and served

[1]. Defendant Sanguin has been referred to in some of the court papers as Sangwin. This order refers to him as Sanguin.

[2]. Defendants Dennison and White were dismissed on June 18, 1975 on the authority of

*Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Defendants O'Brien, Beebe and Sturges were dismissed May 11, 1976 on the authority of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

17 years in the state penitentiary. In 1972 the Plymouth County District Court ordered plaintiff released on the grounds of the involuntary confession and all charges were dismissed. Plaintiff charges that he has suffered personal injury in the form of violation of his constitutional rights, loss of freedom, loss of income, pain and suffering and loss of dignity.

### Motion for Summary Judgment

As defendant Sanguin has withdrawn Division 2 of his motion for summary judgment, we need deal only with Division 1 which asserts that this action is barred by the statute of limitations. In effect, the defendant asserts that because for some reason the plaintiff failed to produce medical records at his initial trial, the period of limitations began to run against him in 1955.

■ It is clear that the issues surrounding the confession were raised at trial and in post trial motions, but failed to affect the conviction. Only in 1972, when the district court released Triplett was there a determination that his rights had been violated. At that time this action ripened. The case was filed and defendant Sanguin, an Iowa resident, was served within any of the applicable Iowa statute of limitations.[3]

The movant claims that plaintiff knew all the operative facts in 1955 and should have sued then. Knowing the operative facts in a case based on § 1983 is clearly a different matter from knowing the facts in a tort case. In tort there is an act or inaction and injury. There is no question as to the type of injury. Rather the extent of injury and causative links are at issue. However, in a § 1983 action it is necessary to first define the constitutional wrong on which the claim is based. Here the Plymouth County District Court did just that in October of 1972. It is almost too evident to warrant comment that plaintiff, having been convicted of murder by virtue of a confession which in 1955 was deemed legal and admissible, could not have, at that time, pursued a § 1983 claim. *See Kauffman v. Moss*, 420 F.2d 1270, 1274–75 (3d Cir.) *cert. denied* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *cf. Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 157–158, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

In fact the Eighth Circuit Court of Appeals has recognized that issues determined at a criminal trial may estop the criminal defendant from relitigating them in a civil action based on § 1983. *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69 (8th Cir. 1976).

It is well established that prior criminal proceedings can work an estoppel in a subsequent civil proceeding, so long as the question involved was "distinctly put in issue and directly determined" in the criminal action.

532 F.2d at 76.

■ The state district court found that the conviction was based on the involuntary confession. The issue of voluntariness was sufficiently raised at the original trial to warrant estoppel until the court reversed the conviction in 1972.

To hold that a plaintiff needed to ignore the criminal proceedings and immediately sue under § 1983 would mean that plaintiff would have had to pursue a technically possible, but at the time frivolous suit. To so argue is to read Kafka into law.

■ Defendant raises the "discovery rule" as a bar. That rule is inapplicable in this context. In addition, it is possible to analogize this issue to that of a continuing tort, that is, each day the plaintiff was

---

**3.** § 614.1 Code of Iowa (1975)

2. Injuries to person or reputation—relative rights—statute penalty. Those founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty, within two years.

4. Unwritten contracts—injuries to property—fraud—other actions. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years, except as provided by subsection 8.

deprived of his constitutional rights constituted a new violation. Thus the statute of limitations would run from the last day of incarceration.

In light of the above discussion, this court can see no reason to believe defendant will be unfairly prejudiced by allowing this action to proceed.

### Motion to Vacate Order

Plaintiff timely moved to vacate this court's order of January 25, 1977 which made final the court's April 4, 1975 order dismissing defendants Azordegan and Sainz on the basis of ineffective service.

Defendants Azordegan and Sainz were served personally in Mississippi and North Carolina, respectively. They moved to dismiss and were re-served under FRCP 4(e) and the Iowa "long arm" statute, § 617.3 Code of Iowa (1973).

This court held that both attempts were ineffective and that § 617.3 could be applied prospectively only. Plaintiff now asks to vacate the order so that it may properly move for court ordered service under IRCP 56.1 and 56.2

█ Defendant resists on the grounds that filing of an appeal stays the district court's hand from further consideration of its order. That jurisdictional argument is mooted by the Eighth Circuit Court of Appeal's June 8, 1977 remand for consideration of the motion for court ordered service.

█ The granting of motions under FRCP 60(b) is within the discretion of the court rendering the judgment. *Hale v. Ralston Purina Co.*, 432 F.2d 156 (8th Cir. 1970); *Pagan v. American Airlines Inc.*, 534 F.2d 990 (1st Cir. 1976). Several courts within the eighth circuit have held that 60(b) is to be liberally construed to accord justice. *State of Iowa v. Union Asphalt & Road Oils, Inc.*, 281 F.Supp. 391, 398 (S.D. Iowa 1968), *affirmed* 409 F.2d 1239 (8th Cir. 1969); *Hodgson v. American Can Co., Dixie Products*, 317 F.Supp. 152 (W.D.Ark.1970), *reversed in part* 440 F.2d 916 (8th Cir. 1971); 11 Wright & Miller, Federal Practice and Procedure: Civil § 2857.

█ In this case, reopening the case to allow proper service will further justice and there is no persuasive argument that defendants will be unduly prejudiced. Under FRCP 60(b)(1) the order may be vacated.

### Motion for Court Ordered Service filed May 2, 1977 as amended June 27, 1977

Plaintiff, having failed to effectively serve defendants Sainz and Azordegan under the Iowa long arm statute, now seeks a court order under IRCP 56.1 or 56.2[4] for extra-territorial service. This raises a number of thorny questions.

Procedurally plaintiff first sought a court order under 56.1(n) and defendants resisted on the grounds that: (1) 56.1(n) does not authorize extra-territorial service; (2) service was barred by the two-year statute of

---

4. IRCP 56.1:
(n) If service cannot be made by any of the methods provided by this rule, any defendant may be served as provided by Court Order, consistent with due process of law. [Effective July 1, 1975].
IRCP 56.2 Alternate Method of Service.
Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the State of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the constitution of the United States.

Service may be made on any such corporation, individual, personal representative, partnership or association (1) as provided in Rule 56.1 within or without the state, or (2) if such service cannot be so made, in any manner consistent with due process of law prescribed by order of the court in which the action is brought.
Nothing herein shall limit or affect the right to serve an original notice upon any corporation, individual, personal representative, partnership or association within or without this state in any manner now or hereafter permitted by statute or rule. [Effective July 1, 1975.]

limitations contained in § 614.1(2) Code of Iowa (1977); (3) plaintiff failed to use due diligence by not initially serving under 56.-1(n); (4) 56.1(n) may not be employed retroactively; (5) promulgation of 56.1(n) is beyond the Iowa Supreme Court's authority; and (6) retrospective application of 56.1(n) violates due process.

Plaintiff responded by amending his motion to include service via IRCP 56.2 should the court find 56.1(n) inapplicable.

*Out of state service*

The law in Iowa on the relationship of 56.1 and 56.2 is not settled. As noted in plaintiff's memorandum in support of his amendment to the motion for court ordered service, one authority considers the sections essentially redundant. 1 Vestal and Willson, *Iowa Practice, April, 1977 Cumulative Supplement*, §§ 10.02(12)–(13), pp. 12–19. Section 56.1 in general seems to deal with in-state service. The language of 56.1(n) therefore, could be read to apply only to service within Iowa. However, paragraph 2 of 56.2 provides that service may be made "(a) as provided in rule 56.1 within or without the state, or (b) if such service cannot be so made, in any manner consistent with due process of law prescribed by order of the court in which the action is brought." 56.2 IRCP. This could be read as adding extra-territorial service to that provided in 56.1 or as an incorporation of 56.1 [including its extra-territorial service provision of subsection (n)].

■ This court agrees with the plaintiff that Rule 56.1(n), as an addition to old Rule 56, expands the reach of the courts beyond Iowa's boundaries and thus is adequate grounds for service in the present case.

However, even if 56.1(n) is read narrowly to comport with defendant's interpretation, 56.2 *explicitly provides for out-of-state, court ordered service.*

*Statute of limitation*

■ Next, the defendant raises the issue of a two-year statute of limitations barring reservice. Normally the statute of limitation is raised as an affirmative defense. FRCP 8(c). However it may be raised by motion where the facts relating to the running of the statute appear on the face of the pleadings. See *Wilburn v. Pepsi-Cola Bottling Company of St. Louis*, 492 F.2d 1288 (8th Cir. 1974); *cf. Rose Barge Line Inc. v. Hicks*, 421 F.2d 163 (8th Cir. 1970); Wright & Miller, Federal Practice and Procedure: Civil § 1277.

■ Here defendants raise the statute of limitations in a resistance to a motion for court-ordered service. The resistance will be considered a motion to dismiss.

Plaintiff first asserts that § 614.1(2) Iowa Code, is not applicable because this action should not be characterized as a malicious prosecution which would be subject to a two-year statute of limitation for tort actions. There is recent support for applying the more liberal five-year statute. See *Barrett v. Wichael*, 387 F.Supp. 1263, 1264 (S.D. Iowa 1974). The second circuit seems recently to have adopted a flexible balancing test to determine the applicable period. *Meyer v. Frank*, 550 F.2d 726 (2nd Cir. 1977). There is some ambivalence in the eighth circuit as to which subsection applies in § 1983 cases. *Compare Johnson v. Dailey*, 479 F.2d 86 (8th Cir. 1973) with *Glasscoe v. Howell*, 431 F.2d 863 (8th Cir. 1970).

■ In general the courts have borrowed the state statute of limitation which would be applied in an analogous case in state court. *Chevron Oil Company v. Huson*, 404 U.S. 97, 104, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The Eighth Circuit Court of Appeals has generally held § 1983 actions to fall within the two-year statute of limitations for torts. Though the court is uncomfortable with mechanically equating an action based on the deprivation of constitutional rights with a common law tort, overwhelming authority leads it to the conclusion that the case at bar is controlled by the two-year statute. § 614.1(2) Iowa Code (1975).

*Tolling the statute*

Defendant asserts that because the original service was ineffective and state law

prior to *1975* required that service tolled the statutory period, the statute was not tolled in 1974 and has run. Were this a case based on diversity of citizenship that argument may have had some merit. However this case is based on § 1983 and presents a federal question.

Where a federal matter or cause of action is involved, the cases have uniformly held that an action is deemed commenced at the time the complaint is filed.

2 Moore's Federal Practice, ¶ 3.07 at 3–113 (1977).

The United States Supreme Court recognized the distinction between diversity and federal question actions in the context of tolling in *Ragan v. Merchants Transfer Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). *Ragan* was a diversity action for damages arising out of a highway accident. The court applied the *Erie*[5] analysis and held that the Federal Rules of Civil Procedure did not control commencement. Plaintiff argued "that since the suit was properly commenced in the federal court before the Kansas statute of limitation ran, it tolled the statute." 337 U.S. at 533, 69 S.Ct. at 1235. The court stated:

> That was the reasoning and result in *Bomar v. Keyes*, 162 F.2d 136, 141. But that case was a suit to enforce rights under a federal statute. [Civil Rights Act, 8 U.S.C. § 43] Here, as in that case, there can be no doubt that the suit was properly commenced in the federal court. But in the present case we look to local law to find the cause of action on which suit is brought. Since that cause of action is created by local law, the measure of it is to be found only in local law. . . It accrues and comes to an end when local law so declares. . . .

*Id.* Though *Ragan* has been eroded, if not overruled in recent years, this language remains intact. See *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Prashar v. Volkswagen of America, Inc.*, 480 F.2d 947 (8th Cir. 1973); *Krout v. Bridges*, 58 F.R.D. 560 (N.D.Iowa 1973); *cf.*

*Groninger v. Davison*, 364 F.2d 638 (8th Cir. 1966).

In an analogous case dealing with commencement under the Clayton Act, the Eighth Circuit Court of Appeals concluded that "federal law controls in determining whether the action was properly commenced." *Moore Co. of Sikeston, Mo., v. Sid Richardson Carbon & Gas Co.*, 347 F.2d 921, 922 (8th Cir. 1965). That case may be distinguished from the one at bar on the basis that 15 U.S.C. § 15(b) contained its own four-year statute of limitation. However the circuit court made little of this technical distinction.

In fact the Fifth Circuit, in *Jackson v. Duke*, 259 F.2d 3 (1958), held that a civil rights suit, filed on the last day of the applicable statutory period but which was not issued immediately because plaintiff's counsel had made insufficient copies and the complaint set forth the wrong middle initial of one of the defendants, tolled the statute. The court of appeals, citing *Bomar, supra*, specifically distinguished the rules for tolling in federal question and diversity cases. 259 F.2d at 6. The court then held that an amended complaint was permissible where there was no indication that plaintiff abandoned his claim or unreasonably delayed its prosecution.

In *Pritchard v. Smith*, 289 F.2d 153 (8th Cir. 1961) the Eighth Circuit Court of Appeals held that a § 1983 action is governed by federal law. "In such a situation, the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 . . . does not apply." 289 F.2d at 154. In *Pritchard* the court stated that interstices in federal law could be filled with state law so long as state law was not inconsistent with federal law. *Id.* at 157. In the present case, where the commencement of the action is deemed procedural and federal rules supply the standard, the federal rule on filing should control. *Cf. Shaw v. Garrison*, 545 F.2d 980 (5th Cir. 1977).

 These cases clearly require this court to apply FRCP 3 and find that the

---

5. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

statute of limitations was tolled by filing of the complaint in 1974.

### Re-service: Due diligence

██ Defendant next asserts that because plaintiff did not employ all possible means of service when he filed in 1974, he failed to use due diligence and should hence be estopped from later attempting service under 56.1(n). This would be a harsh outcome indeed. Plaintiff filed in 1974 and proceeded to serve out-of-state defendants first under F.R.C.P. 4(f) and then under 4(e) by incorporating the state long arm statutes, § 617.3 Code of Iowa. Both attempts were ineffective. But because a procedural technicality deprived plaintiff of gaining jurisdiction over defendants, it should not follow that an attempt to correct service should be barred, even though there was a lapse between dismissal and motion for court-ordered service of 13 months.

Defendants cite *Elizabethtown Trust Co. v. Konschak*, 267 F.Supp. 46 (E.D.Pa.1967) and *Newhart v. George F. Hellick Coffee Co.*, 325 F.Supp. 1047 (E.D.Pa.1971) in support of their due diligence argument. The former case involved service which came six years after the accident and five years after filing. The latter involved service more than six years after the accident and more than four years after filing. In neither case was there proof of actual or constructive notice to defendants.

Defendants claim that allowing re-service would violate due process. The court can see no reason why defendants will be prejudiced if this case comes to court on the merits. The actual conduct complained of occurred some 22 years ago. The action is saved by the state district court's 1972 decision and the fact that the alleged constitutional deprivation resulting from the conduct continued for 17 years. In this context due process addresses issues of notice and ability to prepare an adequate defense. Certainly the 1974 filing put defendants on notice and re-service now, three years later,

can work no due process deprivation on defendants.

### IRCP 56.1(n) and 56.2 are ultra vires the authority of the Supreme Court

Defendants also raise the novel issue of whether the Iowa Supreme Court has the authority to enact rules 56.1(n) and 56.2. They claim that these two rules seek to enlarge the jurisdiction of the Iowa courts beyond that conferred by statute and are therefore void.

Defendants cite *dicta* in a number of Iowa Supreme Court cases to the effect that jurisdiction can be enlarged by the legislature only. However, the court is empowered to create its own rules and as long as they are procedural they shall have effect. In addition, the legislature reviews the court-promulgated rules and may amend them. Failure to amend in effect constitutes ratification.

Here the court has prescribed methods of reaching out-of-state corporations and individuals. Due process is guaranteed by the minimum contact requirements not now in question. The court has merely provided for service to the full extent constitutionally permissible.

Defendants' point is well argued, if not well taken. They rely on cases such as *Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) for the proposition that a court may not extend by rule jurisdiction conferred by statute.

But this court does not find a conflict between rules 56.1 and 56.2 and other statutes. And it should be noted that the *Sibbach* court held that promulgation of FRCP 35 and 37 were within the authority granted to the Supreme Court, though they significantly altered procedural rules of discovery in federal courts.

In *Mississippi Pub. Corp. v. Murphee*, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946) the court dealt with the claim that *FRCP* 82[6] conflicted with promulgation of FRCP

---

**6.** Jurisdiction and Venue Unaffected

These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein. An admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a

4(f).[7] Defendant objected to being subjected to personal jurisdiction gained through FRCP 4(f). The court stated:

Rule 4(f) does not enlarge or diminish the venue of the district court, or its power to decide the issues in the suit, which is jurisdiction of the subject matter (citation omitted) to which Rule 82 must be taken to refer. Rule 4(f) serves only to implement the jurisdiction over the subject matter which Congress has conferred, by providing a procedure by which the defendant may be brought into court at the place where Congress has declared that the suit may be maintained. Thus construed, the rules are consistent with each other and do not conflict with the statute fixing venue and jurisdiction of the district courts. 326 U.S. at 445, 66 S.Ct. at 246.

The court concluded:

The fact that the application of Rule 4(f) will operate to subject petitioner's rights to adjudication by the district court for northern Mississippi will undoubtedly affect those rights. But it does not operate to abridge, enlarge or modify the rules of decision by which that court will adjudicate its rights. It relates merely to "the manner and means by which a right to recover * * * is enforced." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 [65 S.Ct. 1464, 89 L.Ed. 2079.] In this sense the rule is a rule of procedure and not of substantive right, and is not subject to the prohibition of the Enabling Act. *Id.* at 445–446, 66 S.Ct. at 246.

■ It is clear that the courts have broad leeway in fashioning rules dealing with pleadings and court practice and procedure. Rules 56.1(n) and 56.2 remain procedural and remedial and not in conflict with explicit legislative enactments. They are therefore within the scope of the Iowa Supreme Court's authority.

### Retroactivity of IRCP 56.1(n) and 56.2

Rules 56.1(n) and 56.2 are distinguishable from § 617.3 of the Iowa Code in that the statute requires a form of consent and has thus been deemed to touch on substantive rights. The rules do not affect substantive rights as drastically as did those at issue in *Sibbach* and therefore come within the purview of the Iowa Supreme Court's rule making authority.

■ The rules, applied retroactively, do not substantially impair "vested rights acquired under existing laws" or create "a new obligation", impose "a new duty" or attack "a new disability in respect to transactions or considerations already passed" as argued in defendants' brief.

In *Walker State Bank v. Chipokas*, 228 N.W.2d 49, 51–52 (Iowa 1975), the Iowa Supreme Court noted that though retroactivity is a question of legislative intent, an exception to this rule exists when dealing with procedural, rather than substantive matters. The court reiterated the equitable policies of now deleted IRCP 1(b) which stated in relevant part:

(b) Effective Date. These rules will take effect on July 4, 1943. They govern all proceedings in actions brought after they take effect, and also further proceedings in actions pending . . . .

---

civil action for the purposes of Title 28, U.S.C. §§ 1391–93.

As amended Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966.

**7.** FRCP 4(f) Territorial Limits of Effective Service.

All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state. In addition, persons who are brought in as parties pursuant to Rule 14,

or as additional parties to a pending action or a counterclaim or cross-claim therein pursuant to Rule 19, may be served in the manner stated in paragraphs (1)–(6) of subdivision (d) of this rule at all places outside the state but within the United States that are not more than 100 miles from the place in which the action is commenced, or to which it is assigned or transferred for trial; and persons required to respond to an order of commitment for civil contempt may be served at the same places. A subpoena may be served within the territorial limits provided in Rule 45.

Though the court in *Walker State Bank* considered the rule functionally equal to a legislative enactment, it did not state that a rule *was* a legislative act. Defendants assert that § 4.5 Iowa Code controls the retroactivity of statutes and this court agrees. However, rules 56.1(n) and 56.2 are not statutes and thus § 4.5 is inapplicable.

In addition, it is difficult for this court to review the rules of a state supreme court, rules promulgated according to statutory authority, and find them void. Such a determination is better left to the legislature or the state courts themselves.

### Request for Oral Argument

 Defendant Azordegan has requested oral arguments be set on the question of personal jurisdiction. The court believes that the copious briefs and memoranda on the subject provide a basis for deciding the question without necessitating time-consuming argument.

### Motion for Partial Summary Judgment

Plaintiff moved on July 28, 1977 for partial summary judgment on the issue of defendant Sanguin's liability. The admissions and pleadings indicate there is no genuine issue as to the material facts surrounding this defendant's participation in the treatment and questioning of the plaintiff in 1954–1955.

Defendant, however, invokes the defense of qualified immunity based on good faith performance of his duties as an attendant in the state mental institution. Defendant also claims that his testimony at the original trial was mistakenly focused on the time period immediately prior to the plaintiff's being brought in for the interview and that his answers indicating he had no personal knowledge of drugs being administered were addressed to that period and not to the period in which he participated in the administration of such drugs.

The circumstances of this case and surrounding this specific defendant lead to the conclusion that as to his role in treatment and testimony, there is a material question as to both objective and subjective good faith which can only be determined at trial. Though this case is distinguishable from *Sebastian v. United States*, 531 F.2d 900 (8th Cir. 1976), Sanguin's position at the hospital raises a question as to the reasonableness of his conduct.

### Conclusion

As this order notes, a number of the legal questions raised are unsettled in this circuit and present substantial problems to the court. However, in the interests of equity it is the opinion of this court that the factual issues must be decided on their merits at trial.

It is therefore

ORDERED

1. Defendant Sanguin's motion for summary judgment is denied.

2. The order of January 25, 1977 is vacated.

3. The motion for court-ordered service is granted. By not later than Monday, November 14, 1977, plaintiff shall serve defendants Azordegan and Sainz with notice of this action by having a United States Marshal serve a copy of the summons and complaint upon each of said defendants at his respective residence in accordance with FRCP 4(d)(1).

4. Defendant Azordegan's request for oral argument on the question of personal jurisdiction is denied.

5. Plaintiff's motion for partial summary judgment against defendant Sanguin is denied.